

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable L. T. Youngblood, Chairman
Upper Colorado River Authority
Bronte, Texas

Dear Sir:                                    Opinion No. O-7239

Re: Whether the Upper Colorado
River Authority has received
a grant and/or loan and/or
advancement from the federal
government as provided for in
Acts 1935, 44th Legislature,
Regular Session, House Bill 77,
Section 15, 17A, as amended;
and related question.

This acknowledges receipt of and is in reply to your letter of May 22, 1946 in which you request an opinion on the following two questions:

1. Whether or not a grant and/or loan and/or advancement has been received by said Upper Colorado River Authority from the United States of America as provided for in House Bill 77 Acts of 44th Legislature, Regular Session, 1935, and amendments thereto.

2. Whether the taxes donated and granted by the State of Texas to the Authority as described in Section 17A of the Acts, as amended, may be lawfully expended for any purpose other than to repay the principal and/or interest due the United States of America by reason of any loan and/or advancement obtained in accordance with the provisions of the Act, i.e., whether operating expenses including administrative expenses of the Authority may be lawfully paid out of tax monies to be donated by the State as described in Section 17A, as amended.

Acts 1935, 44th Legislature, Regular Session, Chapter 126, H. B. 77, is the enactment of the Texas Legislature which created a Conservation and Reclamation District composed of the Counties of Coke and Tom Green, to be known as the Upper Colorado River Authority, pursuant to and for the purposes set forth in Section 59-a of Article 16, of the Constitution of the State of Texas.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable L. T. Youngblood - Page 2

For purposes of this opinion we quote the pertinent portions of Acts 1943, 48th Legislature, Chapter 170, S. B. 73, Sections 17 and 17A of Chapter 126 of the Acts of the Regular Session of the 44th Legislature, as amended by Chapter 305 of the Third Called Session of the 44th Legislature, as amended by the Regular Session of the 46th Legislature, S. B. 453, as amended by the Regular Session of the 47th Legislature, Chapter 174, as follows:

"Section 17. For a period of twenty (20) years, and commencing with the fiscal year beginning September 1, 1944, there is hereby donated and granted by the State of Texas to the Upper Colorado River Authority herein created, all of the net amounts of the annual current state ad valorem taxes that may be collected from the property and from persons in Coke and Tom Green Counties, Texas, which otherwise would go into the General Fund of the State of Texas, including the rolling stock belonging to railroad companies, which shall be ascertained and apportioned as now provided by law.

"Provided, however, that in no event shall such amounts hereby granted ever exceed in any one county the sum that would be produced for any current year by the levy of the then current state ad valorem taxes for general revenue purposes, on the valuation of said county as shown by Comptroller's records for the year 1934, and all sums collected in excess of such amount shall continue to go into the General Revenue Fund of this State."

" . . .

"Section 17A. None of the taxes hereby donated and granted to the said Upper Colorado River Authority, herein created, shall be made available to said authority as herein provided for unless and until said Authority shall have first received from the United States of America a grant and/or a loan and/or an advancement of sufficient size to reasonably insure the completion of such coordinated and completed system of improvement and control of the Colorado River and its tributaries thereto and water thereof as may be approved by the Board of Water Engineers of the State of Texas, such

approval to be certified to the Comptroller of the state by said Board of Water Engineers; provided, however, that a legally binding commitment from the United States of America for such grant and/or loan and/or advancement shall be construed as the receiving thereof; such grant and/or loan and/or advancement to be used for the purposes for which said Authority was created, and in accordance with the provisions of this Act, and the taxes hereby donated and granted shall be used only to repay the principal and/or interest due the said United States of America by reason of any loan and/or advancement obtained in accordance with the provisions of this Act; and in the event no grant and/or loan and/or advancement in the sum of at least Two Million ($2,000,000.00) Dollars has been received by said Authority, as herein contemplated, by January 1, 1948, then the grant and/or donation of said taxes to said Authority from the State of Texas herein provided for shall be null and void; provided, however, that in the event the grant and/or loand and/or advancement from the United States of America is not received by January 1, 1948, all of such moneys, together with any accrued interest thereon, shall be by the State Treasurer placed in the General Revenue Fund. If the grant and/or loan and/or advancement herein referred to shall be received by said Authority from any department of government set up as an agency by the United States of America, it shall be construed as having been received from the United States of America within the meaning of this Act. It is expressly provided, however, that the fact that any provision of this section may not have been complied with, within the time or in the manner herein required, shall not at any time invalidate Sub-section R, Section 2, but said subdivision shall remain in full force and effect notwithstanding.

" * * *"

Section 17-b, Acts 1935, 44th Legislature, Regular Session, Chapter 126, H. B. 77, provides as follows:

"An opinion from the Attorney General of Texas as to whether or not a grant and/or loan and/or advancement has been received by said Authority from the United States of America as herein provided

Honorable L. T. Youngblood - Page 4

for, shall be Authority for the action of any per-
son charged with any duty contingent upon such
grant and/or loan and/or advancement."

The law in question in Section 17-b thereof places
directly upon the Attorney General the responsibility of deciding
whether or not a grant, loan or advancement has been received by
the Authority in the manner prescribed by law. Such section
places upon the Attorney General the responsibility of determin-
ing whether or not such grant, loan or advancement constitutes
a "legally binding commitment" within the meaning of the statutes.
It is necessary, therefore, that this department examine the legis-
lation passed by the United States Congress with respect to the
matters involved.

Public Law 228, 77th Congress, Chapter 377, First Ses-
sion, H. R. 4911, a Federal Act authorizing the construction of
certain public works on rivers and harbors for flood control,
provides in part as follows:

" * * *

"Section 3. That the following works of im-
provement for the benefit of navigation and the
control of destructive floodwaters and other pur-
poses are hereby adopted and authorized in the
interest of national security and the stabili-
sation of employment, and shall be prosecuted as
speedily as may be consistent with budgetary re-
quirements, under the direction of the Secretary
of War and the supervision of the Chief of En-
gineers in accordance with the plans in the re-
spective reports hereinafter designated and sub-
ject to the conditions set forth therein: * * *

" * * *

"COLORADO RIVER BASIN (TEXAS)
The plan for improvement of the Lower Colorado
River, Texas, for flood control in accordance with
the recommendation of the Chief of Engineers in
House Document Numbered 312, Seventy-sixth Congress,
first session, is approved and there is hereby
authorized $6,500,000 for the construction of the
project.

Honorable L. T. Youngblood - Page 5

The plan for San Angelo Reservoir for flood control and other purposes on the North Concho River, Texas, and for local flood-protection works at San Angelo, Texas, in accordance with the recommendation of the Chief of Engineers in House Document Numbered 315, Seventy-sixth Congress, first session, is approved and there is hereby authorized $2,000,000 for initiation and partial accomplishment of the project."

The Committee on Flood Control of the House of Representatives, 78th Congress, Second Session, in its Report No. 1309, entitled, Authorization for Reservoirs, Levees and Flood Walls for Flood Control, to accompany H. R. 4485, reported in part as follows:

"Colorado River Basin

"Concho River
"(H. Doc. No. 315, 76th Cong., 1st sess.)

"The Concho River Basin has suffered severe flood damage over many years. The largest flood of record occurred in September 1936, when flood losses amounted to over $2,000,000. The most serious problem in the watershed exists in the valley of the North Concho River at and near San Angelo, Texas, where the damage from the 1936 flood amounted to $1,400,000. In order to reduce the flood hazard in this valley, Congress, by the act of August 18, 1941, approved the construction of a flood-control dam and reservoir on the North Concho River upstream from San Angelo, and local protection works through the city of San Angelo, at an estimated cost of $6,800,000 to the United States. The 1941 act authorized $2,000,000 for the initiation and partial accomplishment of this plan. The detailed plans and specifications for these works are now being prepared and the bill authorizes completion of the approved plan at an estimated additional cost of $4,800,000."

Public Law 534, 78th Congress, Second Session, H. R. 4485, 1944 which is an act authorizing the construction of certain projects for flood-control purposes provides in part as follows:

Honorable L. T. Youngblood - Page 6

"Colorado River Basin (Texas)

"In addition to previous authorizations, there
is hereby authorized the completion of the plan ap-
proved in the act of August 18, 1941, (see 33 USCA,
par. 701b-1 et seq.) for the North Concho River,
Texas, at an estimated cost of $4,800,000."

In the Hearings before the Subcommittee of the Committee
of Appropriations, U. S. Senate, 79th Cong., 2nd Session, on H. R.
5400, a Bill making appropriations for the fiscal year ending June
30, 1947, for civil functions administered by the War Department,
we find the justification of estimates, flood control, and general,
on projects recommended by the Chief of Engineers in Column III of
the table on flood control projects for which justifications have
not previously been presented in House hearing on H. R. 5400,
which reads as follows:

| No. | Project | Total esti-mated Federal cost | Allotments to date | Tentative allocation for fiscal year 1947 | Additional to complete after fiscal year 1947 |
|---|---|---|---|---|---|
| 17 | San Angelo Reservoir and floodway, Texas............ Authorized in the 1941 Flood Control Act (H. Doc. 315, 76th Cong., 1st sess.). Earth fill dam with gate control, concrete spillway, levees, flood walls, and channel improvements. Funds are required for continuation of the preparation of plans and specifications and for initiation of construction. The project will provide flood protection for San Angelo and substantial protection to the valleys of the lower Concho and Colorado Rivers." | $6,800,000 | $245,100 | $2,000,000 | $4,554,900 |

In Conference Reports, No. 1931, 79th Cong., 2nd sess., regarding the War Department's Civil Appropriation Bill, 1947, to accompany H. R. 5400, we find the following pertinent information:

"Amendment numbered 3:
"That the House recede from its disagreement to the amendment of the Senate numbered 3, and agree to the same with an amendment as follows:
"In lieu of the sum proposed by said amendment insert $144,065,000; and the Senate agree to the same."

"Amendment No. 3, flood control: Appropriates $144,065,000, instead of $162,777,500 proposed by the Senate and $110,814,000 proposed by the House. The increase over the amount carried in the House bill proposes to include the following projects in the amounts indicated: * * *"

"San Angelo Reservoir and Floodway, Texas (in addition to $40,000 allowed by House for advance planning) * * * $2,000,000."

Public Law 379, 79th Cong., chap. 247, 2nd sess., (H.R. 5400) and Acts making appropriations for the fiscal year ending June 30, 1947, for civil functions administered by the War Department, and for other purposes, sets out the following appropriation in accordance with House Resolution 5400:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the following sums are appropriated, out of any money in the Treasury not otherwise appropriated, for the fiscal year ending June 30, 1947, for civil functions administered by the War Department, and for other purposes, namely: * * *"

"Flood Control

"Flood control, general: For the construction and maintenance of certain public works on rivers and harbors for flood control, and for other purposes, in

152

accordance with the provisions of the Flood Control
Act, approved June 22, 1936, as amended and supple-
mented, including printing and binding, newspapers,
lawbooks, books of reference, periodicals, and of-
fice supplies and equipment required in the Office
of the Chief of Engineers to carry out the purposes
of this appropriation, and for the purchase in the
fiscal year 1947, of not to exceed two hundred motor-
propelled passenger-carrying vehicles, and for prelim-
inary examinations, surveys, and contingencies in con-
nection with the flood control, $144,065,000. . . .

"Approved May 2, 1946."

This Department construes the provisions of Sections 17
and 17A of the Texas statute creating the Upper Colorado River
Authority, as amended by S. B. 93, of the 48th Leg., in the follow-
ing manner:  (1)  Beginning with the fiscal year of September 1, 1944,
The State of Texas donated and granted the Upper Colorado River the
ad valorem taxes specified in the bill.  (2)  The taxes so donated
and granted shall not be made available to said Authority, however,
until a legally binding commitment is received by the Authority from
the United States Government of sufficient size to reasonably insure
the completion of such co-ordinated and completed system of im-
provement and control of the Colorado River as approved by the Board
of Water Engineers of the State of Texas.  (3)  If a legally binding
commitment in at least the sum of $2,000,000 is received by January
1, 1948, by the Authority from the United States Governement, the
donation and grant of taxes by the State of Texas shall not be null
and void but such taxes shall not be made available to the Authority,
until a legally binding commitment is received of a sufficient size
to reasonably insure a completion of the entire project as specified
by the statute.  The commitment for the entire project, however, is
not required to be received by January 1, 1948.

As evidenced by the action and legislation of the Congress
of the United States, hereinabove set out, through its official re-
ports and Public Laws, there has been an authorization and adoption
by the United States Government of the initiation and completion of
the San Angelo Reservoir Flood Control Project which includes the
Flood Control project of the North Concho River.  By virtue of the
provisions of Public Law 379, 79th Congress, Second Session, H. R.
5400, there has been a specific appropriation passed by the federal
government for flood control purposes to be expended under previous

Honorable L. T. Youngblood - Page 9

authorization of $144,065,000.00 and specifically designated for "San Angelo Reservoir and Floodway, Texas (in addition to $40,000.00 allowed by House for advanced planning) $2,000,000.00". It is the opinion of this department that the Congress of the United States of America by virtue of its adoption of the said Texas Flood Control Project and its appropriation toward the initiation and final completion of same has made to the War Department an appropriation in at least the sum of $2,000,000.00. If before January 1, 1948, a contract or agreement is entered between the War Department and the Authority whereby the War Department commits to the Authority the $2,000,000.00 appropriated by the United States Government, we will be glad to render an opinion as to whether there is a legally binding commitment in at least the sum of $2,000,000.00 as required and contemplated under Section 17A of the Texas Statute.

We do not say, nor do we so intend herein to say, that there has been a legally binding commitment as contemplated by the Texas Statute, by the government of the United States concerning the authorization and financing of the whole Flood Control Project herein considered. This department's answer to your first submitted question is that a legally binding commitment in at least the sum of $2,000,000.00 has not been received by said Authority from the United States Government, as contemplated under the provisions of Section 17, as amended by the 48th Legislature. The donation and grant of taxes by the State of Texas shall not be made available to the Authority until a legally binding commitment is received of sufficient size to reasonably insure a completion of the entire project as set out by the Texas Statute. The commitment for the entire project, however, is not required to be received by January 1, 1948.

For the purpose of answering your second question, we quote in part from Section 17A, as amended by the 48th Legislature:

". . . the taxes hereby donated and granted shall be used only to repay the principal and/or interest due the said United S ates of America by reason of any loan and/or advancement obtained in accordance with the provisions of this Act; . . ." (Underscoring ours)

We th8nk the wording of this provision is explicit and clear in setting out the exclusive purposes for which the donated tax monies may be used; i.e., to repay the principal and the interest due the United States of America by reason of the loan or advancement to be agreed upon by the Director of the Upper Colorado River Authority and the United States Government. Our answer to your second question is, therefore, in the negative.

159

Trusting the above satisfactorily answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Chester E. Ollison

Chester E. Ollison
Assistant

CEO:lh



APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN